**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>v.<br>DAVID BROWN,<br>Defendant. | No. 23-cr-83<br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Defendant David Brown ("Defendant") was charged by indictment with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). ECF No. 27. Pending before the Court is Defendant's omnibus pretrial motion (the "Omnibus Motion"). ECF No. 36. The Government filed a brief in opposition, ECF No. 39, and Defendant replied, ECF No. 41. On July 9, 2026, the Court held oral argument on the Omnibus Motion. ECF No. 65. Thereafter, the parties submitted Court-ordered supplemental briefing. ECF Nos. 67, 69; *see also* ECF No. 66. For the reasons stated below, the Court will largely deny Defendant's motion, but will reserve judgment on a discovery-related issue pending an additional submission from the parties.

# I. BACKGROUND[1]

At around 3:45 p.m. on December 17, 2021, Newark Detectives Serrano, Severe, and Johnson (the "Detectives") observed a white Chevrolet Malibu (the "Malibu") driving without a license plate on the front bumper of the vehicle. ECF No. 36-1 at 5 (citing N.J. Stat. Ann. § 39:3-33). The Detectives began trailing the Malibu in their service vehicle and, shortly thereafter, they observed the Malibu turn right without signaling. *Id.* (citing N.J. Stat. Ann. § 39:4-126). Although Defendant states in an affidavit that he was driving "lawfully," ECF No. 51 ¶ 3, visual evidence confirms that the Malibu's front license plate was placed on the passenger side of the vehicle's dashboard on the day of the incident, ECF No. 39-2, Gov't Ex. 2; ECF No. 67 at 3. In addition, Defendant does not state in his affidavit that he used his right turn signal. *See* ECF No. 51.

The Malibu then pulled into a parking lot and Defendant emerged from the driver's seat, closing the Malibu's driver-side door but leaving the car's windows open. ECF No. 36-1 at 5. As Defendant began walking away from the Malibu, Detective Johnson stopped the police car and identified himself and his partners as law enforcement officers. *Id.* The Detectives then exited

[1] The Court takes background facts principally from the Newark Police incident report of Defendant's arrest (the "Incident Report"), which Defendant and the Government both attached to and relied on in their initial briefing. *See* ECF No. 36-1 at 4–5; ECF No. 39-1 at 1–4; *see also* ECF No. 36-1 at 1–2 (Defense counsel's affidavit in support of the Omnibus Motion extensively references the Incident Report). Defendant also submitted an affidavit "in support of [his] motion to suppress evidence seized pursuant to a warrantless search . . . as well as [his] request for a[n] evidentiary hearing on this issue." ECF No. 51 ¶ 2. However, Defendant submitted this affidavit over seven months after submitting his Omnibus Motion. *See* Fed. R. Crim. P. 47(d) ("The moving party must serve any supporting affidavit with the motion."). Notwithstanding Defendant's failure to comply with Criminal Rule 47(d), *see United States v. Lewis*, No. 17-CR-28, 2018 WL 3195158, at *1 (W.D.N.Y. Feb. 1, 2018) ("[Rule] 47(d) requires . . . the moving party to 'serve any supporting affidavit with the motion,' not at a later date." (quoting Fed. R. Crim. P. 47(d)), *report and recommendation adopted*, No. 17-CR-28, 2018 WL 1805554 (W.D.N.Y. Apr. 17, 2018), the affidavit does not change the Court's analysis, so the Court will incorporate its contents as background where relevant, *see* ECF No. 70 ("Hr'g Tr.") at 21:6–8 (Assistant U.S. Attorney: "And so erring on the side of caution and considering it . . . may be the safest course of action.").

their vehicle and Detective Serrano immediately smelled "an overwhelming odor of raw marijuana emanating from" the Malibu. *Id.* One of the detectives then asked Defendant if there was anything in the Malibu other than marijuana, to which Defendant replied, "yeah, a strap," in an apparent reference to a firearm. *Id.* at 2, 5. The Detectives then called the Essex County Sheriff's Office and requested a K-9 team. *Id.* at 5. While they waited for the K-9 team to arrive, the Detectives checked Defendant's identification and discovered two open traffic warrants against him. *Id.* During this time, Defendant states that he "repeatedly asked" officers what crime he was alleged to have committed, but none of the officers "revealed any information." ECF No. 51 ¶ 6. But, as the Government points out in its supplemental briefing, Defendant's affidavit does not contest that he made the "strap" statement. ECF No. 67 at 4; *see also* Hr'g Tr. at 20:2–4.

Roughly 40 minutes after the Detectives initially encountered the Malibu, Sergeant Graves of the Essex County Sheriff's Office arrived with two K-9s: Ollie, a weapons dog, and Kiera, a narcotics dog. ECF No. 36-1 at 5. Sergeant Graves administered K-9 sniffs of the Malibu's exterior, during which Kiera failed to give an indication of narcotics, but Ollie gave a positive indication of weapons on the driver's side window and on the Malibu's trunk. *Id.*

Shortly thereafter, the Detectives searched the Malibu and discovered a firearm loaded with eight rounds in the car's center console. *Id.* The Detectives also discovered a large quantity of marijuana in the Malibu's trunk. *Id.* The Detectives then arrested Defendant. *Id.* According to Defendant, police informed him that officers had discovered a firearm in his car when he arrived at Newark Police headquarters. ECF No. 51 ¶ 10.

On December 20, 2021, a federal criminal complaint was issued against Defendant for one count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §

922(g)(1). ECF No. 1. Defendant was indicted on that charge on February 1, 2023. ECF No. 27. Defendant filed his Omnibus Motion thereafter. ECF No. 36.

## II. OMNIBUS MOTION

Defendant raises several requests in his Omnibus Motion. Defendant asks the Court to (1) suppress Defendant's statement to law enforcement that there was a "strap" in the Malibu; (2) suppress "all evidence seized from Defendant"; (3) hold an evidentiary hearing; (4) compel the Government to produce a list of all potential witnesses; (5) compel the Government to preserve all rough notes, drafts, and final reports created by law enforcement in the course of the investigation; (6) compel the Government to produce all exculpatory evidence; and (7) compel the Government to disclose all relevant information concerning all informants and witnesses. The Court will address these requests in turn.

### A. The Court Denies Defendant's Motion to Suppress His Statement to Law Enforcement

Defendant moves to suppress his statement to law enforcement that there was a "strap" in the Malibu. ECF No. 36 at 6. In particular, Defendant argues that the Detectives did not read him his *Miranda* warnings before asking him, "Is there anything besides marijuana in the vehicle?" *Id.* Therefore, Defendant claims that the Fifth Amendment bars the Government from using his response—"yeah, a strap"—at trial. *Id.*

The Court will deny Defendant's request to suppress his statement that there was a "strap" in the Malibu. Under the *Miranda* rule, the Government may not introduce during its case in chief statements made by a defendant during a "'custodial interrogation' . . . unless he first had been given the now-familiar *Miranda* warnings." *United States v. Mesa*, 638 F.2d 582, 584 (3d Cir. 1980) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)); *see Michigan v. Harvey*, 494 U.S. 344, 350–51 (1990). A defendant is in "custody" for *Miranda* purposes if "the relevant

environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *United States v. Ludwikowski*, 944 F.3d 123, 131 (3d Cir. 2019) (quoting *Howes v. Fields*, 565 U.S. 499, 509 (2012)). And a defendant is subject to an "interrogation" for *Miranda* purposes if law enforcement either (1) engages in "express questioning" or (2) speaks or acts in a manner that law enforcement "should know [is] reasonably likely to elicit an incriminating response." *United States v. Williams*, 635 F. Supp. 3d 333, 337 (D.N.J. 2022) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–02 (1980)). "A person must both be 'in custody' and subject to 'interrogation' for *Miranda* safeguards to apply." *United States v. Familetti*, 878 F.3d 53, 57 (2d Cir. 2017).

Defendant argues that the officer's question, "is there anything besides marijuana in the vehicle?," was "offered to elicit an incriminating response." ECF No. 41 at 1. From this, he argues that "[a]ny statement [he] alleged[ly] . . . made" thereafter was elicited in violation of his *Miranda* rights because "he was not free to leave the scene." ECF No. 36 at 6.

The Court disagrees. Even if the Court assumes that Defendant was subject to an interrogation under *Miranda*, "the . . . noncoercive aspect of ordinary traffic stops" means "that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *see also United States v. Ley*, 876 F.3d 103, 108–09 (3d Cir. 2017); *United States v. Elias*, 832 F.2d 24, 26 (3d Cir. 1987) ("[I]n the normal traffic stop, statements elicited by interrogation are admissible as evidence even if made by a suspect who had not been read the *Miranda* warnings."). Here, the question—"is there anything besides marijuana in the vehicle?"—and Defendant's response—"yeah, a strap"—occurred very shortly after the Detectives stopped him. *See United States v. Caraballo*, 643 F. App'x 163, 168 (3d Cir. 2016) (finding that defendant was not in custody where "[t]he first

exchange occurred very soon after Officer White pulled over Caraballo's Mercedes"). Moreover, the Detectives "took no additional actions that would cause this interaction to rise from a non-coercive traffic stop to a curtailment of [Defendant's] freedom of movement to 'the degree associated with a formal arrest.'" *Id.* (citation omitted). As such, because Defendant's initial interaction with law enforcement did not "present the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*," his request to suppress his statement must be denied. *Ludwikowski*, 944 F.3d at 131 (citation omitted); *see United States v. Whitney*, 350 F. App'x 627, 630 (3d Cir. 2009) (affirming the admissibility of defendant's statements during a traffic stop based on the "well-established rule" of *Berkemer*).

### B. The Court Denies Defendant's Request to Suppress the Firearm and Ammunition Seized from the Malibu

Defendant moves to suppress the firearm and ammunition recovered from the Malibu. ECF No. 36 at 5–6. Specifically, Defendant argues suppression is warranted because the traffic stop was an unlawful seizure and a pretext for the search; officers lacked probable cause to justify the search; the Government cannot rely on the suspected scent of marijuana; the search was conducted without a warrant; and Defendant did not give consent to search his vehicle. *Id.*

The Court will deny Defendant's motion to suppress the firearm and ammunition recovered from the Malibu. To start, the Court finds that the Detectives' traffic stop of Defendant was lawful and that Defendant's pretext argument is irrelevant. Law enforcement may initiate traffic stops "based on a reasonable suspicion that a traffic violation has occurred." *United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018); *see United States v. Barton*, No. 14-cr-237, 2015 WL 7252426, at *2 (M.D. Pa. Nov. 17, 2015) ("With regard to traffic stops, officers may make a warrantless, investigative stop of a vehicle when they have a 'reasonable suspicion' of criminal conduct."). Just before the traffic stop, the Detectives observed Defendant driving without a license plate on

the front bumper of his vehicle. ECF No. 36-1 at 5. Indeed, a photograph of the Malibu just after the incident shows that the license plate was displayed on the passenger side of the car's dashboard and was "obstructed." ECF No. 39 at 4. And at oral argument, Defendant's counsel acknowledged that the "vehicle ha[d] the license plate displayed on the windshield," not mounted to the front bumper of the car. Hr'g Tr. at 14:23–25, 22:21–24. This observation supplied the reasonable suspicion necessary to justify the traffic stop, because it established the Detectives' reasonable belief that Defendant was driving in violation of N.J. Stat. Ann. § 39:3-33.[2] *See United States v. Booker*, 237 F. App'x 782, 783–84 (3d Cir. 2007); *Bahgat v. Twp. of E. Brunswick*, No. 16-1827, 2019 WL 2315031, at *5–6 (D.N.J. May 31, 2019) (noting that (1) N.J. Stat. Ann. § 39:3-33 requires a front license plate to be displayed on a vehicle no "more than 48 inches from the ground in a horizontal position" and (2) "New Jersey case law makes clear that a driver's failure to have a plate properly and 'conspicuously' displayed on his or her vehicle constitutes a reasonable and articulable suspicion that a motor vehicle offense has been committed, thereby justifying a stop"; and rejecting plaintiff's argument that officers lacked reasonable suspicion to stop his vehicle where plaintiff admitted that "his license plate was not affixed to his vehicle, but rather, 'on the dashboard/in the windshield'" (citation omitted)), *aff'd*, 821 F. App'x 134 (3d Cir. 2020); *see also United States v. Hong-Long*, No. CR 22-210, 2025 WL 592357, at *2 (W.D. Pa. Feb. 24, 2025) ("A finding of reasonable suspicion is justified, where, as here, the officer who initiates the traffic stop has 'specific, articulable facts to believe that an individual has violated the

---

[2] The Incident Report also states that the Detectives observed Defendant turn right without signaling on a public street around 3:45 p.m. and that they believed that this turn violated New Jersey law. ECF No. 36-1 at 5 (citing N.J. Stat. Ann. § 39:4-126 ("No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.")). This observation similarly (and independently) justified the traffic stop. *See United States v. Draper*, No. 22-CR-386, 2023 WL 3726506, at *6–7 (E.D. Pa. May 30, 2023).

traffic laws.'" (citation omitted)). As such, the Detectives' supposed "[p]retextual motivations are irrelevant."[3] *United States v. Xiao Wu Zhou*, No. 17-cr-394, 2018 WL 1858187, at *3 (M.D. Pa. Apr. 18, 2018) (citing *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) ("[T]he Supreme Court established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime.")); *see United States v. Leonard*, No. CR 21-461-1, 2022 WL 2068251, at *4 (E.D. Pa. June 8, 2022).

Next, the Court finds that the Detectives had probable cause to search the Malibu's center console, the location where the Detectives ultimately discovered the firearm and ammunition central to Defendant's criminal indictment. ECF No. 36-1 at 5. Therefore, as discussed below, the Detectives did not need a warrant under the automobile exception and Defendant's consent argument is irrelevant.

If an officer develops "reasonable suspicion or probable cause" of criminal activity (beyond the traffic infraction) during a traffic stop, the stop may be extended. *United States v. Garner*, 961 F.3d 264, 269–70 (3d Cir. 2020); *see also United States v. Miller*, No. CR 23-135, 2024 WL 115686, at *4 (E.D. Pa. Jan. 10, 2024). And under the automobile exception to the Fourth Amendment's warrant requirement, law enforcement can search a car without a warrant if they have probable cause that the car contains contraband, *i.e.*, if they reasonably believe there is a "fair probability that contraband or evidence of a crime will be found in" the car. *United States*

---

[3] Defendant argues that the fact that the underlying traffic offenses were later dismissed undermines the Detectives' reasonable suspicion that formed the predicate for the traffic stop. Hr'g Tr. at 15:13–19. But "[t]he later dismissal of . . . charges does not demonstrate that the officers lacked probable cause [or reasonable suspicion] at the time of the" incident. *Faisal v. Rahway Police Dep't*, No. 13-376, 2014 WL 673066, at *3 (D.N.J. Feb. 20, 2014); *see also Woods v. Holloway*, No. 25-1098, 2025 WL 2970253, at *8 (S.D. Tex. Oct. 21, 2025) ("The fact that a traffic citation or ticket is later dismissed does not show that the officer lacked reasonable suspicion to conduct a traffic stop.").

*v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002); *see United States v. Nasir*, 17 F.4th 459, 467 n.8 (3d Cir. 2021); *United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014) (noting that the Government bears the burden of establishing the automobile exception).

Because the Detectives discovered the firearm and ammunition in the Malibu's "center console," ECF No. 36-1 at 5, the key question is whether the Detectives had probable cause to search the car's center console, *see United States v. Matthews*, 597 F. Supp. 3d 694, 703 (D.N.J. 2022) ("Where the automobile exception applies, its authorization extends to 'every part of the vehicle and its contents that may conceal the object of the search.'" (quoting *Donahue*, 764 F.3d at 300)). And in determining probable cause, the Court must evaluate the evidence from "the standpoint of an objectively reasonable police officer." *United States v. Mainor*, 393 F. App'x 10, 17 (3d Cir. 2010) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."); *Donahue*, 764 F.3d at 302.

Here, the Detectives had probable cause to search the center console. After stopping Defendant, Detective Serrano "immediately" smelled an "overwhelming odor of raw marijuana emanating" from the Malibu.[4] ECF No. 36-1 at 5. Moreover, when the officers asked whether

---

[4] Defendant argues that the Detectives cannot "rely on the aroma of . . . marijuana as the probable cause for the officers to conduct [the] warrantless search of [D]efendant's motor vehicle" given the New Jersey Attorney General's February 2021 guidelines concerning marijuana decriminalization under state law. ECF No. 36 at 5. Those guidelines—which state that "the odor of marijuana . . . by itself no longer establishes 'reasonable articulable suspicion' to initiate a stop or search of a person or their vehicle to determine a violation of a possession offense or a fourth-degree distribution offense" under New Jersey law, ECF No. 36-1 at 9—have little bearing on the Omnibus Motion. "[T]he use and possession of marijuana—even where sanctioned by a State—remains a violation of federal law." *United States v. Cannon*, 36 F.4th 496, 498 (3d Cir. 2022). And "[i]t is well-settled that evidence seized by state officers in violation of state law is admissible so long as the same search, if conducted by federal officers, would have complied with the Fourth Amendment." *United States v. Dimas*, 418 F. Supp. 2d 737, 741 (W.D. Pa. 2005); *see, e.g.*, *United States v. Pavao*, 134 F.4th 649, 657 (1st Cir. 2025); *see also United States v. Rickus*, 737 F.2d 360,

Defendant had anything other than marijuana in his car, Defendant did not dispute the officer's assessment that there was marijuana in the vehicle. At that point, the Detectives had probable cause to search the Malibu for marijuana. *See Green*, 897 F.3d at 186 ("It is well settled that the smell of marijuana alone . . . may establish . . . probable cause." (citation omitted)); *United States v. Gaffney*, No. 23-1895, 2026 WL 1948169, at *2 (3d Cir. July 6, 2026) (similar); *see also Leonard*, 2022 WL 2068251, at *4 (similar, and noting that "probable cause [is] determin[ed] . . . based on the totality of the circumstances"). This probable cause justified a warrantless search of "any area of the vehicle in which [marijuana] [could] be found," including the Malibu's center console. *United States v. Baley*, 505 F. Supp. 3d 481, 497 (E.D. Pa. 2020); *see, e.g.*, *United States v. Lackey*, No. 17-CR-269, 2018 WL 5920644, at *2 (M.D. Pa. Nov. 13, 2018) ("[B]ecause marijuana could easily be concealed in the vehicle's center console, the officers were authorized to search the center console compartments."), *aff'd*, No. 20-2977, 2022 WL 313807 (3d Cir. Feb. 2, 2022); *United States v. Harrison*, 2018 WL 1325777, at *3 (D. Del. Mar. 15, 2018) ("[T]he automobile exception to the Fourth Amendment's warrant requirement is satisfied because the smell of marijuana was particularized and articulable, thus establishing the requisite probable cause to conduct a search of Defendant's entire vehicle and bags within."). And finally, the fact that law enforcement seized a firearm and ammunition from the center console—not marijuana—does not change the Court's analysis.[5] *See, e.g.*, *United States v. Nowell*, No. CR

363–64 (3d Cir. 1984) ("[E]vidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law."); *United States v. Castillo-Bienvenido*, No. CR 03-487, 2004 WL 350765, at *1 (E.D. Pa. Feb. 6, 2004) ("Although the initial search in this case was conducted by local police, the validity of searches and seizures in our court is nevertheless governed by federal law and not by state law.").

[5] In addition, the fact that the K-9 sniff of the Malibu's exterior was negative for narcotics did not "vitiate[]" the Detectives' "probable cause to search [Defendant's] car." *United States v. Dennis*, 527 F. App'x 221, 224 (3d Cir. 2013); *see also United States v. Villafranco-Elizondo*, 897 F.3d

22-27, 2023 WL 129738, at *11 (E.D. Pa. Jan. 6, 2023); *United States v. Lloyd*, No. CR 21-81, 2022 WL 2916684, at *5 (E.D. Pa. July 22, 2022). Thus, the Court denies Defendant's motion to suppress the firearm and ammunition.

**C. The Court Denies Defendant's Request for an Evidentiary Hearing**

Defendant asks the Court to hold an evidentiary hearing on his motion to suppress. *See, e.g.*, ECF No. 36 at 6; ECF No. 41 at 1. "A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). "A defendant raises an issue of material fact by submitting evidence that, if true, would tend to establish an essential element of his or her claim that evidence was obtained unconstitutionally." *Id.* at 106; *see also United States v. Hutcherson*, No. CR 22-307, 2025 WL 3677545, at *8 (D.N.J. Dec. 18, 2025) ("[T]he purpose of an evidentiary hearing is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact." (citation omitted)); *United States v. Vasquez-Rodriguez*, Crim. No. 14-419, 2015 WL 3939057, at *3 (D.N.J. June 25, 2015) ("A suppression hearing is not a discovery device.").

The Court will deny Defendant's request for a hearing. Even if the Court were to conclude that Defendant presented a colorable constitutional claim, he has failed "to submit evidence that creates a non-conjectural dispute of material fact." *Hutcherson*, 2025 WL 3677545, at *9; *see United States v. Jackson*, 363 F. App'x 208, 210 n.2 (3d Cir. 2010) (noting that a defendant must raise "significant factual disputes in order to receive a pretrial evidentiary hearing"). For example,

---

635, 644 (5th Cir. 2018) (rejecting "the notion that the failure of a drug dog to alert deprives officers of existing probable cause").

Defendant argues that, to the extent the Government invokes the automobile exception to the Fourth Amendment's warrant requirement, he is entitled to an evidentiary hearing "to determine whether the actions of the Newark Police were unforeseeable and spontaneous under the circumstances of their encounter with the defendant." ECF No. 36 at 6. But those issues are not material to the Omnibus Motion. *Hines*, 628 F.3d at 105–06. As explained above, the Detectives had the requisite reasonable suspicion and/or probable cause to stop and search the Malibu, and any suggestion that the Detectives' actions were pretextual is irrelevant. In addition, this argument is entirely speculative. *Id.* Indeed, Defendant "submits no relevant evidence" on this point, so these issues are not in genuine dispute. *Hutcherson*, 2025 WL 3677545, at *9.

Similarly, Defendant argues in his first reply brief that an evidentiary hearing is necessary to determine whether Defendant "was . . . free to walk away from the scene" when he said there was a "strap" in his car. ECF No. 41 at 1. But this issue is not material. *Hines*, 628 F.3d at 105–06. To be sure, "a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers." *Howes*, 565 U.S. at 510 (citation omitted). However, "constraints on freedom of movement are a necessary but not sufficient condition of custody" for purposes of *Miranda*. *Ludwikowski*, 944 F.3d at 133–34. As noted above, to be in "custody" for *Miranda* purposes, "[t]he individual must also be subject to 'the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.'" *Id.* (citation omitted). And, as discussed above, detention pursuant to a traffic stop generally does not rise to this threshold of coercion given "the temporary and relatively nonthreatening" nature of a traffic stop, notwithstanding the fact that the traffic stop limits the subject's freedom of movement. *Maryland v. Shatzer*, 559 U.S. 98, 112–13 (2010); *see Berkemer*, 468 U.S. at 437–42. So, Defendant's argument related to his freedom of movement is unavailing. As such, the Court denies Defendant's request for an evidentiary

hearing.[6] *See United States v. Dougherty*, No. CR 19-64, 2020 WL 3574467, at *4 (E.D. Pa. July 1, 2020) (noting that an evidentiary hearing is warranted only where there is an existing material factual dispute that the Court "cannot reliably . . . resolve[] on a paper record" (citation omitted)).

### D. The Court Denies Defendant's Request to Order the Government to Produce a List of Potential Witnesses

Defendant asks that the Court order the Government to produce a list of potential witnesses who will testify against him at trial. ECF No. 36 at 6. As an initial matter, it is "'firmly established' that the government is under no obligation to 'divulge the identity of its witnesses in a noncapital case.'" *United States v. Coles*, 511 F. Supp. 3d 566, 580 (M.D. Pa. 2021) (citation omitted). In any event, the Government represents that it has already functionally abided by this request by providing Defendant with the Incident Report, which "indicates [the] officers [that] were present during the traffic stop, the subsequent detention, and . . . the search of the Malibu." ECF No. 39 at 16. Accordingly, the Court denies Defendant's request for a list of the Government's trial witnesses as moot.

### E. The Court Denies Defendant's Request for an Order Requiring the Preservation of Notes

Defendant also seeks an order requiring that any notes, drafts, and final reports prepared in relation to the case be preserved and disclosed to the defense. ECF No. 36 at 7. The Government

---

[6] Defendant also argues in his reply brief that the officers' failure to adhere to the "Newark Police Body Worn Camera Policy" entitles him to an evidentiary hearing. ECF No. 41 at 2. To the extent that Defendant seeks to justify an evidentiary hearing by speculating that officer-worn body camera footage—*if it existed*—would show police misconduct, such speculation is insufficient to generate a dispute of material fact. *See Jackson*, 363 F. App'x at 210 n.2. Moreover, the Government submits that the Detectives "were . . . operating as Deputy United States Marshals and as such, their failure to wear body-worn cameras was not in violation of Newark Police Department policy in part because they were operating in their federal capacities." ECF No. 67 at 5. And in any event, the Court agrees with the Government that this issue does not affect the disposition of the Omnibus Motion. ECF No. 67 at 5–6 (citing *United States v. Mejia*, No. 24-CR-212-1, 2025 WL 934343, at *8 (S.D.N.Y. Mar. 27, 2025)).

represents that "[t]he federal prosecutors and federal law enforcement agents who compose the prosecution team in this case are all aware of, and intend to comply with," their preservation requirements, and that it will provide the Court with such materials for *in camera* review upon request. ECF No. 39 at 16 (citing *United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983)). Accordingly, the Court denies Defendant's request as moot. *United States v. Evans*, No. 21-cr-899, 2022 WL 16631263, at *2 (D.N.J. Nov. 2, 2022).

### F. The Court Will Withhold Judgment on Defendant's Request for Further Production of *Brady* and *Giglio* Material

Defendant seeks the production of any evidence favorable to the defense or detrimental to the Government's case pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), as well as any evidence required to be disclosed under *Giglio v. United States*, 405 U.S. 150 (1972). ECF No. 36 at 8. In its opposition brief, the Government represents that it has "complied with its [*Brady*] obligations thus far and will continue to do so should any exculpatory material come into its possession." ECF No. 39 at 16. Accordingly, the parties are directed to meet and confer by October 30, 2026, to discuss the disclosure of *Brady* and *Giglio* material. By November 6, 2026, the parties shall submit a joint status letter (not to exceed five pages) advising the Court whether any issues related to *Brady* or *Giglio* material remain outstanding.

### G. The Court Denies Defendant's Request for Disclosure Regarding Potential Informants

Finally, Defendant requests that certain information regarding potential informants—including their names and addresses, evidence of any former bad acts, drug and alcohol addiction, mental illness, instances of dishonesty, and government payments—be disclosed to Defendant. ECF No. 36 at 8–9. To the extent Defendant requests that the Government disclose information regarding informants, "there is a qualified privilege possessed by the Government to refuse to disclose the identity of a confidential informant from whom it has received information about

alleged criminal activity." *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983). To determine whether the Government's privilege must give way to disclosure, the Court must weigh "the public interest in protecting the flow of information against the individual's right to prepare his defense." *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981) (citation omitted). Relevant factors to consider include "the crime charged, the possible defense, [and] the possible significance of the informer's testimony." *Id.* (citation omitted). And the defendant bears the burden of demonstrating a specific need for disclosure of the identity of a confidential informant. *Id.* at 197.

Here, Defendant argues that "fundamental fairness requires full disclosure" of any potential informant's information, and such information is necessary to "appropriately prepare to cross-examine and test the credibility of the witness." ECF No. 36 at 8–9. However, these assertions do not identify a specific need for disclosure and instead express a general desire to learn the identity of individuals who may have informed against Defendant. Speculating that there is an informant who might have information that could aid the defense is "insufficient to justify disclosure of [an informant's] identity." *United States v. Stanton*, 566 F. App'x 166, 168 (3d Cir. 2014) (citation omitted); *see also Coles*, 511 F. Supp. 3d at 581 (finding that "a generalized desire to know the identity of those who have informed against" a defendant is insufficient to justify disclosure of an informant's identity). Nor has Defendant established a sufficient basis for disclosure on grounds that he must assess any potential informant's credibility. *See United States v. Griffith*, 598 F. Supp. 3d 221, 239 (M.D. Pa. 2022) (finding disclosure inappropriate where the defendant "state[d] in conclusory fashion that disclosure is required so that he may properly investigate the informants' credibility"). As such, the Court denies Defendant's request for disclosure of information pertaining to potential Government informants.

## III. CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 9th day of October 2026,

**ORDERED** that Defendant's Omnibus Motion (ECF Nos. 36, 51) is **DENIED** in part; and it is further

**ORDERED** that the parties shall meet and confer by October 30, 2026, to discuss the disclosure of *Brady* and *Giglio* material. By November 6, 2026, the parties shall submit a joint status letter (not to exceed five pages) informing the Court as to any outstanding issues related to the disclosure of *Brady* or *Giglio* material.

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**